Case number 23-1192 et al. New York State Public Service Commission petition for the Federal Energy Regulatory Commission. Mr. Schwartz for the petitioner, Mr. Berry for the respondent, and Mr. Hughes for the interviewer. Morning, counsel. Schwartz, please proceed when you're ready. Good morning. Thank you. May it please the court. Jeffrey Schwartz for the New York State Public Service Commission. I'd like to reserve two minutes for rebuttal. The orders on review here raise rates by hundreds of millions of dollars because of a speculative assumption that New York will force fossil fuel generators to retire by 2040. But FERC has never found that New York must, that New York will, or is even likely to force such retirements by then. The remand order found no record evidence for that assumption. And the later orders agree. The May 19th order held that the zero emission target can be achieved in more than one way and does not require all fossil fuel resources to cease operating. The October 4th order similarly held, we continue to find that the Climate Act does not require all fossil fuel resources to retire by 2040. And FERC agreed with extensive evidence submitted by the Market Monitor that in 2040, New York will still need large quantities of dispatchable thermal resources to preserve reliability. Now, if New York does not require retirement by 2040, if, for example, it adopts a net emission framework that allows some fossil fuel resources to keep running, or if it keeps the fossil fuel resources around on standby as a reliability backstop, or if it requires retirement by 2043 instead of by 2040, in each of those cases, consumers will have been forced to pay hundreds of millions of dollars that were never needed and that they can never get back. So has any of that happened yet? No, those questions have not been answered yet. Right, so which way does that cut? Because if those questions haven't been answered yet and they haven't been teed up, it seems like what the Commission ratified makes some sense because even in the way that we remanded the case, you take the existing state of play as a given and you don't sort of project forward to anticipate things that haven't come about. Correct. The existing state of play, when the system operator filed in November 20, was a law that does not regulate generators at all directly. It regulates only the New York agencies and tells them to regulate to achieve two goals. And as it pertains to the New York Commission, the Climate Act put forward two goals that the Commission has to pursue simultaneously, reducing emissions and protecting reliability. And at every stage of the implementation, when the initial program was due in mid-2021, which was seven months after the system operator filed, and every two years thereafter, when the New York Commission reviews the program, it's supposed to consider reliability along with reducing emissions. And frankly, if those things conflict, reliability wins. New York is not going to turn out the lights in New York in order to hit the zero emission target. So the reason why uncertainty cuts in favor of maintaining the existing pre-act amortization period is that doing it the other way risks charging customers hundreds of millions of dollars that were never necessary for them to pay. Right? Because let's say that New York were to decide tomorrow that allowing these resources to continue, that they could continue in operation. Presumably in the next reset, the amortization period would revert to 20 years, but there would be no way for customers to get back the extra charges that were imposed the 17-year period. But if you do it the other way around, the generators are not at risk. If New York tomorrow were to say, in fact, yes, by 2040, all the fossil fuel generators will retire, then in the next reset, the numerator is still the same. The numerator is the full cost of entry of the hypothetical peaking plant. And the denominator isn't 17 years anymore. In the next reset, the denominator is 13 years. So the rates are going to be calculated in the next reset at a level sufficient for the generators to recover their costs. And I know the agency says that the zone of reasonableness is a range. And that's true, but there are limits. And the most basic one is that the Federal Power Act requirement, the Federal Power Act requires balancing investor and consumer interests. That requirement is why it's wrong to conflate the zone of reasonableness with what a reasonable investor might do. The investor perspective is only half the equation. Consumer protection is why FERC's no speculation precedent holds that speculating about future regulation can't justify a rate increase today. The need to protect consumers against potentially unnecessary charges is what takes the increase outside of the zone of reasonableness. The speculation makes it unreasonable. And the final point, the final limit on the zone of reasonableness is the evidentiary record. FERC here concluded in the remand order, I think it's in paragraph 31, that dispatchable resources like these will be needed for reliability, which makes it unlikely to presume that they're going to retire by 2040. The orders on review ignored these limits. They inquired only what an investor might think, not what's fair to consumers. And they answered in a way that speculates what New York will do and blinds itself to the evidence that the resources will be needed. And FERC then treated the result, a multi-hundred million dollar rate increase, as just unreasonable per se. The flaws in FERC's reasoning are revealed by considering the fact that FERC held that the existing 20-year amortization period remains reasonable. That tells you several things. First, it says that the foundation for the 17-year period is shaky. If you knew that the resources were going to retire by 2040, then a 20-year period wouldn't be reasonable. The second thing it tells you is that FERC believes the system operator can run the system reliably today on the basis of the 20-year amortization period. And that means the shorter period and higher rates are unnecessary. The bottom line here is that this rate increase is based on forecasts of regulatory action that New York has not yet taken and may never take, and that the system operator can take into account if New York eventually does take. Because raising rates needlessly is not just unreasonable, the court should vacate FERC's orders. Thank you, counsel. We'll give some time for rebuttal. The commission now is paired. Thank you, your honor. In its remand decision, this court said that all the New York ISO needed to demonstrate in this proceeding was that the amortization period represented a reasonable estimate of the number of years an investor would inspect a gas-fired plant built in New York between 2021 and 2025 to remain commercially viable. The commission reasonably found that the New York ISO met that standard here because of the fact that since the last reset proceeding, there had been passage of an act. It required that there be zero emissions by 2040. But there were implemented regulations that still hadn't come to fruition yet. Exactly, your honor. But you have to remember that the point of the amortization period is to represent investors' expectations of risk. It's to compensate them for risk. And what you want somebody to do is today have the incentive to build a plant. And the point is, is the investor looking today to build a fossil-fueled plant is presented with the current circumstances of there is a 2040 emissions, zero emissions requirement. There are no regulations that permit them to meet that requirement any other way other than by ceasing operation. Because there are no regulations that permit them to modify their facilities and continue to operate, there are no regulations that permit fossil-fueled plants to continue to operate after 2040. So the point is, what the New York ISO said, as this court said in its remand decision, thus the developer of a fossil peaking plant would face substantial uncertainty about the financial returns of a fossil peaking plant starting in 2040. And that is the concern that the New York ISO was addressing because you want all of the investors to have adequate incentives to build a fossil-fueled plant now. And the point is, if there are regulations, as the commission said, that come on later on, that is why there are periodic resets. And new regulations that come on that don't exist now, but do exist later, can be taken into account in the next reset proceeding. And I believe... This may be something to ask the Petitioners' Council too, but has anything concrete happened by way of regulations? And to my knowledge, Your Honor, there's... What I know is that recently, in 2023, the New York Public Service Commission had a proceeding in which it asked for comments on the scope of the zero emissions requirements in the scope of what constitutes the energy system, the electric system under the statute. And they asked for supplemental comments on that. And my understanding is that those supplemental comments were just filed... The due date was January 19th of this year. So I don't believe with regard to the issue... I thought that this Climate Act required them to set up a program by June of 2021. It does, Your Honor. And if they had done that, then they wouldn't be here, presumably, because they would have had the regulations in place and you could tell exactly what the situation would be unless they'd be repealed or changed or modified over the years. But because they didn't do that, they didn't get the information regarding what the amortization would be, right? That's right, Your Honor. And the point being that they do that under the commission's regulations in this court's remand decision based only on the laws and regulations that currently exist. And at the time, as the court said, at the time, there was no... The New York Public Service Commission had not modified the 2040 zero emissions requirement and had given no indication that it planned to do so. Which is still the case. Which is still the case. And you will notice in their pleadings in this case, the New York Public Service Commission never says, we're intending to modify these requirements. They're just saying, we might. The statute permits us to, but we haven't decided. And so what the New York ISO has to do is to make investors now, investors who are building a fossil fuel peaking plant now, have sufficient incentives to build. And what they do that by making sure that the risks are adequately compensated. And right now, to an investor building a fossil fuel peaking plant, you have to say the passage of a statute that says zero emissions by 2040 is a risk to them. It's an additional risk that didn't exist before. And the New York ISO was taking that risk into account and lowering the amortization period to 17 years. But how does this affect the anti-speculation precedent that's out there? Well, the anti-speculation precedent, actually the commission found ultimately, as this court in the remand decision said, any speculation about future actions by the New York Public Service Commission to implement the statute are squarely inconsistent with this commission's anti-speculation precedent. And so on remands, the commission said, following the guidance of the that the New York ISO is properly looking at the current state of affairs, which is, there is a 2040 zero emission requirement. There are no regulations modifying that requirement and no regulations permitting anybody to be excused from that requirement. But the implementing regulations haven't been passed. That's right, your honor. This is always speculation, isn't it? I mean, you're making a projection about what the future is going to hold. And maybe if you only project the future for the next 10 minutes, you're not speculating. But if you're talking about years, you absolutely are. And no matter which way you cut it, if you comply with the commission's position, you're speculating that the 2040 requirement is going to be changed. And if you're doing what the commission did, which is we're not going to, we're going to assume that that's part of it. I mean, the Climate Act had some effect. We can't say that it didn't have any effect, which is basically what the New York commission has said. Right, your honor. And the commission recognized that the nature of the inquiry that the New York has to make, which is to estimate investor expectations of recovery for a gas plant into the future is necessarily a forward-looking assumption. And this is discussed in the October 2020 order at paragraph 43 and the May 2023 order at paragraph 35. But the point of the commission's anti-speculation precedent is when the New York ISO makes that judgment about investor expectation of risk, it should not incorporate into that judgment any speculation about the law changing in the future, the laws and regulations, no speculation about laws and regulations changing in the future. And so that's why in this case, the commission said that it's appropriate to think that an zero emission requirement imposed. So the speculation is only about laws. It's not about scientific development or changes in the climate or any of that stuff. It's just laws. Is that what you're saying? Well, the anti-speculation precedent specifically goes to the, as this court said in its remand decision, FERC's precedents required the New York ISO to take into account currently effective laws and regulations and avoid speculating about laws and regulations in the future. And that was the anti-speculation precedent. Yes, Your Honor, at page two of the remand decision. And it's cited to the commission's 2014-2017 demand curve reset order at paragraph 74, which says the same thing, that it is specific to currently effective laws and regulations. Because to estimate the investor expectations necessarily requires some forward-looking assumptions on the part of the New York ISO. But the point is to sort of cabin those forward-looking assumptions, they're required to just use the current state of the law as a basis for estimating the investor's expectations. And how does cost come in here? Because there's projected millions of dollars if you use the 17-year amortization schedules. So how did you all balance that? The point is this is a 205 filing that only has to do with the demand curve reset, which is the parameters of the cost of new entry for a new peaking plans. The tariff specifies once there is a reasonable estimate of the cost of new entry, the tariff specifies then how the resulting rates are calculated. And in this 205 proceeding, the tariff is not an issue. And so as the commission said, what happens is that once you have a just and reasonable cost of new entry, the result, the resulting rate, results from the previously approved rate design. And therefore, if they want to challenge, if they think that the tariff results in unreasonably high rates, they can file a complaint under Section 206 to challenge the tariff and to challenge the rates that result from the tariff. But in this 205 proceeding, where the tariff is not an issue, it's beyond the scope of this proceeding. Is the Climate Act subject to a test under the FERC? The FERC doesn't control emissions, does it? No, Your Honor. No. So, and I thought that there's a general requirement for national ambient air standard, quality standards, that the FERC puts into effect once state California is exempt. But I didn't, I wasn't sure whether New York was exempt too. I don't know the answer to that, Your Honor. But, I mean, there are emissions. Call for speculation, right? Well, there are other provisions of the Climate Act, which go to other departments, which go to specific emissions limits and that sort of thing. But I'm not aware that this particular you're aware of challenging the validity of? The Climate Act? Not that I'm aware of, Your Honor. Any additional questions? No further questions. Thank you. Thank you. Thank you, counsel. Interveners now, Mr. Hughes. Thank you, Your Honor. Paul Hughes for Interveners, Independent Power Producers of New York. I just touched briefly on three points, the lack of regulations and speculation. Second, the risk calculus. And third, governing 205 standard. First, on the fact that there are no regulations, as the court pointed out, New York has missed its deadline for implementing regulations. And FERC specifically found at paragraph 38, JA408, that that increases the aggregate risk that investors face because they don't know what the future looks like. And that aggregate increase in risk only supports the proposal that NYISO made. Additionally, in IPNY1, this court said the PSC has not exercised its discretion to modify the act's zero emission target and given no indication it ever would. So the baseline is we know there is a zero emission target. In fact, it's a requirement in the law. Now, it could be modified. But as investors currently confront the situation, it has not been done so. And I think that's the baseline that this court and its prior decision already set forward. And that establishes the reasonableness of the action. The second point, though, is the risk more broadly. As FERC explained at paragraphs 42 and 34 and 33 of its decision, that even if there is alternative options that allow these thermal plants to continue running post 24, they're most likely going to be vastly more expensive because they'll either use renewable natural gas or hydrogen or some other technology that is unproven at this point that has a much, much higher price point. And so that goes to, well, first, it's not even clear that it's technically feasible is what FERC said. It may not exist. But if it does exist at 2040, the evidence shows it's almost certainly going to be vastly more expensive. And that's ultimately what has the effect on the uncertainty. But the last quick point is under section 205. The standard here is very demanding. This is not about what the best rate is. It is whether or not this is a just and reasonable rate that's proposed by NYISO. And FERC was well within its authority to find that this was within the zone of reasonableness. And finally, New York can make decisions about its generation mix. And its policy decision may be a very good decision for 2040, but that does have an effect on costs. And that needs to be taken into account by developers ensuring that there is sufficient incentive to develop the kind of capacity that New York wants in 2040 in the future. And I think that is the natural effect of its decision. Let's discuss a little bit about, we've had some discussion about this speculation. And the way I understand it, there's a speculation with respect to the generators, but the Climate Act did not require generators to be ceasing operations, if you will, by 2040. They're allowing New York to set up its program to actually come into compliance with the Climate Act. And so when I'm thinking about my question on speculation, I'm talking about, you can't figure out your plan based on speculation of the implementing regulations that have not been yet on the books. Yes, Your Honor, I'd answer that in two different ways. The first is, as I think this Court understood speculation the last time this case was before the Court was, the Court said to reduce speculation, we take the Climate Act as the baseline, which says there's no fossil generation by 2040. But there is an unless in there, and I appreciate there's an unless. There could be other sorts of regulations that New York Public Service Commission could implement. But the question is, until those are implemented, what is the baseline that investors understand? And unless and until there is an exception that is put in place, the investors understand the baseline today is what the law requires. And that's what this Court very clearly said in its opinion, is that unless there is an exception, that there will be no thermal generation. So as a result, that massively increases the risk. Now, it could be the case. The speculation is maybe, as New York says, things will change. But the reason that we don't think about what may happen down the road is because we're trying to understand the risk profile that investors today are saying, should I build new capacity in New York? What is that going to look like? They have to understand what the cost of the return on their investment is. The second point, though, is even if we were to engage in the speculation that New York suggests, where they say, well, there may be ways that those thermal plants still has some utilization with hydrogen, with renewable natural gas, those are the sorts of proposals that are being considered. Even if we were to engage in that speculation, that is vastly more expensive for the generator and those technologies are not proven. So we start engaging in technological speculation is, is there even grid level hydrogen, renewable natural gas that will be available in 2040? We don't know that speculation. And if so, it's almost assuredly going to be vastly more costly. All of that goes into why it was appropriate for the New York. But is your decision based on any speculation about the future regulations? No, we say the way that this minimizes, and I think this accords with what this court said the last time is we take the Climate Act as given, which it currently says that there is no emissions post 2040 unless New York PSC does something in the future. Now, there is an ongoing research. It doesn't impose any requirements with respect to the generators. It does impose, though, a requirement on PSC. And the issue is that it's the what is a reasonable investor, a developer of a new plant going to understand? Do I invest the hundreds of millions of dollars required to build bring new capacity to New York? What's the return on that investment going to look like that decision they have to make today based on what they currently understand the baseline law to be? And that's right. Are you aware of any new construction? Well, I'm not, Your Honor, to the extent, though, that there has been proposals for new construction. We talk about this in briefs, the Astoria and the dance camera plants that the New York Department of Environmental Conservation has denied permits for thermal plants on the basis of the Climate Act. What the New York Department of Environmental Conservation has said is building new thermal units is inconsistent with the Climate Act's requirements of zero emissions. So to the extent that there's been permitting applications that have been requested from the Department of Environmental Conservation, those have been so far denied on the basis of the Climate Act. And what I think that suggests is to the extent New York is pushing for a different sort of peaking facility, such as batteries and other zero emission options, that is within the prerogatives of New York to select its generation mix. But those are more expensive alternatives for having the peaking capacity that the people of New York need. So as your point is, if you're an investor looking out ahead, the Climate Act is just a real thing. It was enacted. It's a law. So you have to take that into account in charting future. If there were regulations in effect, those would be real things, too. But there's just not. And there wasn't at the time that the 20 years was reduced to 17. If those regulations come into being and that changes the outlook, that changes the horizon, then in the next cycle, that'll be taken into account. But as it stands now under our remand order, the existing legal state of affairs is that there is a Climate Act. There are no regulations. And then you have to ask, OK, well, then what does the road ahead look like in that universe? That's precisely right, Your Honor. And that's why there's a reset every four years to take into account developments. But in doing that, are you telling me now that you're not looking at what those regulations may state or what you project them to do? Well, Your Honor, to minimize speculation, we look at what the laws on the books today are and the laws on the books the Climate Act is. And that's what I'm trying to get you to get to. You're only focusing on the Climate Act, or are you also considering future implementing regulations? What I think this court's decision in the first case is we look at what laws are on the books today and the Climate Act exists. There is the possibility that regulations could create exceptions to it, but it's speculative if and when that will occur. We're already more than two years past the deadline requirement for those regulations to come. We don't know if and when they will come. And so that's why I think this court said the last time the baseline is the Climate Act, as Your Honor said, is a real thing. It exists. It bears on the risk that current developers must take into account when considering what actions or investments to undertake. And if that changes, then that will be addressed in the next reset period. But as it exists today, understanding the costs and benefits of a potential new infrastructure project. But without the regulations, are there any real requirements with respect to the fossil fuel or the generators? Yes, Your Honor. I think, to the extent that there's any doubt about that, what I just mentioned about the Astoria and the that the New York Department of Environmental Conservation is quite clear that this has a real today meaningful effect in saying that licenses for new thermal generation are being denied on the basis of the Climate Act. So that does have a very, I think, meaningful, clear implication that the Climate Act is real, that it has real meaningful obligations. And again, there's nothing wrong with New York making a decision about its generation mix for public policy reasons that New York seeks to foster. It just has implications for the cost of new capacity in the state when those decisions are made and what that does to forward-looking investment. Is there a legislative history for this Climate Act? A committee report or reports or their hearings were held? Your Honor, I don't think there is particularly good pre-enactment history. What we've pointed to in the briefs is the best that we found, I think anyone's uncovered, which was there was governor, a memo, a governor signing statement, and then a majority member remarks at the time of the signing, all of which identify moving New York off fossil fuels. We talk about that in the briefs. But no hearings that you're aware of? I'm not aware of a particular committee reports, Your Honor, that go into detail about this. It was rather done by the— Does New York in general prepare the legislature? Does the New York legislature in general—some states don't—prepare committee reports? Your Honor, I don't know generally the answer to that question. I do know we did look here, and so far as I'm aware— And you're not aware that your clients would have testified in any hearings that were held on this? My client is active in these issues. So, for example, it was noted there was a comment period for the current regulations, and my client has participated in that. I'm talking about the statute. I understand, Your Honor. I'm just making the point broader that my client is active. I'm not aware, though, of any statements that they made. I'd be happy to research that and provide a letter to the court if they did.  Mr. Schwartz, we'll give you the two minutes you had left. Thank you. There's a lot there. First, as to Dan Scammer, the permit denial goes to whether this is the right reference unit, not whether fossil fuel resources that are built will have to retire. Furthermore, that decision's reliance on the Climate Act provisions that we're talking about here was vacated by a subsequent ruling of the ALJ, who then stayed for their proceedings precisely to wait for the New York Commission to issue implementing regulations. Now, the other side said that it's not speculating about implementing regulations. It absolutely is. The 17-year amortization period reflects modeling parameters that fossil fuel resources will cease operating by 2040 to meet Climate Act requirements. But FERC has said the Climate Act does not require fossil-fueled retirement. They absolutely are speculating that that's what the implementing regulations will do. It is no more speculative, however, to assume that fossil fuel resources— It doesn't require it if your client passes regulations modifying it. Your client has not done that. So until you do that, it does require— No, it has done neither. Right now, there are no regulations on the books. Nobody could go to court and cite the Climate Act or any regulation of the New York Commission or the DEC to force— They can't cite a regulation because there aren't any. Correct. And they could not force the closure of any specific fossil-fuel generator. Now, let's discuss what the state of the law was when the system operator filed in November of 2020. At that point, there was a Climate Act that required two things—emission reductions and reliability. There were no implementing regulations. FERC has admitted that the act of its own force does not require retirements to be implemented in more than one way, hasn't been implemented, does not define zero emissions or tell the New York Commission how to measure emissions, that it can be implemented on a net emission basis that would let fossil-fueled resources be used to reduce emissions, and that it requires the New York Commission at every stage, both initially and thereafter, to consider reliability. And FERC itself has reviewed the evidence and found that fossil-fueled resources are likely to be needed for reliability after 2039. So the question in this case comes down to, on that record, whether the mere existence of the emission reduction goal without any more justified imposing hundreds of millions of dollars in extra costs on consumers, even though those costs might never be needed. And remember, FERC said 20 years remains reasonable. The system operator can keep running the system reliably today on the basis of the existing amortization period. As for the New York Commission and its implementation of the law, again, in November 2020, the New York Commission wasn't even yet on the clock to have issued implementing regulations. That was seven months off. In fact, the New York Commission, on the day before FERC changed its mind in this case, opened a proceeding to define zero emissions. That proceeding is underway. Comments have been recently received. New York is working avidly to try to implement the law. The first step it took in October 2020 was to try to promote the development of massive amounts of new renewable resources. But nobody is here saying, and FERC has not found, that that by itself is sufficient to achieve that goal. Finally, one last point, Your Honor. The Federal Power Act requires balancing investor and consumer interests. All you've heard on the other side is investor, investor, investor. We're here representing the consumers and the court should vacate. Thank you, counsel. Thank you to all counsel. We'll take this case under submission.
judges: Srinivasan, Childs, Randolph